## THE PRUDENCE.

## THE ANNIE HODGES.

(Circuit Court of Appeals, Third Circuit. September 17, 1923.)

### Nos. 2972, 2973.

Collision ⊕⇒71(2)—Tug and barge in tow held in fault for collision at night between the barge and an anchored schooner.

A tug, with two barges in tow tandem, and the second barge, *held* in fault for a collision between the latter and an anchored schooner, when entering Maurice river, N. J., at night; the tug for not navigating with reasonable care to avoid the schooner, whose lights she saw when 1½ miles

away, and for not shortening her towing lines on entering the river, and the barge for not keeping a lookout.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suits in admiralty for collision by William H. Cannon and by Sherman Hager, master and owner of the schooner Annie Hodges, against the tug Prudence and the barge Dorothy. From a decree holding both tug and barge in fault, they appeal. Affirmed.

See, also, 212 Fed. 537, 541.

J. Elwood Dukes, of Philadelphia, Pa., for appellants.

Francis S. Laws and Lewis, Adler & Laws, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court holding the steam tug Prudence, the barge Dorothy, and the schooner Annie Hodges, hereinafter called the Hodges, guilty of negligence which resulted in a collision between the Dorothy and Hodges at Boathouse pier, near the mouth of Maurice river, N. J., on the night of June 18, 1912. Both of the above-entitled causes were tried together in the District Court and were argued together in this court. The same questions arise in both cases, and so they will be disposed of in one opinion.

The Hodges is an oyster schooner about 61½ feet long, 22 feet beam, and 5½ feet draft. She anchored for the night in question at Boathouse pier, some distance east of the Mouth Ranges; in water about 4½ fathoms deep, with about 25 fathoms of anchor chain out. The Prudence, having two barges, the Karl and the Dorothy, in tow, after having waited at the mouth of the river until the tide rose high enough to enable her to get over the bar, started up the river on flood tide. She is 97 feet long, 20 feet beam, and 9½ feet draft. Each of the two barges were about 200 feet long. The hawser between the Prudence and the Karl was about 100 feet long, and that between the two barges was 30 feet long. The entire tow, therefore, was about 627 feet long. The Prudence and Karl passed the Hodges safely, but the Dorothy, last in the tow, struck her, damaged her, and fractured the leg of William H. Cannon, who was on board the Hodges. He brought suit against the Prudence and Dorothy to recover for the injury to his leg, and Sherman Hager, master and owner of the Hodges, brought suit against the same boats for damages done to her by the Dorothy.

The learned District Judge entered a decree adjudging the three boats, the Prudence, the Dorothy, and the Hodges, negligent, and divided the damages equally among them. The Hodges has not appealed from that decree, and so her negligence is established. The question before us is whether or not he erred in finding the Prudence and Dorothy negligent.

The libelants in both cases averred that:

"It was the duty of the said steam tug Prudence and those in charge of her navigation, and of the barge Dorothy and those in charge of her navigation, while proceeding up the said river, to so maneuver and direct their several

courses that both said tug and said barge would pass clear of the said schooner Annie Hodges, which the said tug and the said barge could and would have done, if they had been maneuvered, handled, and navigated in a proper, skillful, and seamanlike manner. That through the negligence of those in charge of the navigation and handling of the said tug, and of the said barges, and because of the failure on their part to properly navigate and maneuver them and direct their courses, the said barge Dorothy, which was the last barge in the tow, was brought into collision with and afoul of the said schooner Annie Hodges."

The libelants charged that the Prudence was negligent in the following particulars: In not being made fast to the barge Dorothy in the usual and customary way; in proceeding too close to the Hodges, and not allowing sufficient room for the tug and barges to pass in safety; in not making proper allowance for the wind and tide; and in other particulars to be shown at the trial. They further charged that the Dorothy was negligent in not keeping a proper lookout; in permitting the tug Prudence to tow her in the manner in which she was being towed at the time of the collision; in coming too close to the schooner Annie Hodges; in not properly assisting by her helm the efforts of the tug to keep the barge clear of the schooner; in not taking proper precautions to avoid the collision; and in other respects to be stated at the trial.

The learned trial judge in his opinion said:

"I am convinced from the evidence that she [the Prudence] could have been so navigated as to tow the two barges past the schooner in safety, if ordinary care had been exercised. Those in charge of the Prudence and the Dorothy knew that the tide was setting in towards the west bank of the river. The light of the Hodges had been observed when the tug, with the barges, was at sufficient distance to have either laid the course of the tug and barges so as to avoid the collision, or, knowing that the tide would carry the barges across the channel, the hawser of the Dorothy could have been loosed and the barge could have been anchored until the tug could get her under control. It is a matter of such common knowledge that, where tugs are towing with long hawsers, the tow is likely to inflict injury by making a wide sweep upon a turn, that the greatest degree of care is imposed upon the tugs and tows in the interest of common safety. The Hortensius, 174 Fed. 272; The H. M. Whitney, 86 Fed. 697, 30 C. C. A. 343; The Gladiator, 79 Fed. 445, 25 C. C. A. 32. As no precautions were taken by either the tug or the barge, they must both be held in fault for the collision." 212 Fed. 539.

The exercise of ordinary care required is the care under the circumstances of an ordinarily prudent man. The question before us is whether or not the testimony justified the conclusions of the learned District Judge. The course of the river is tortuous. On entering the river, the course is north, and after passing Grog Island, located on the eastern bank of the river, at or near its mouth, the channel curves to an easterly, and then to a southeasterly, direction. The course into the river is located by following the Mouth Ranges, which are indicated at night by two lights on the northern shore of the river until the shoal water along Grog Island is passed, and then the channel bears off about four points to Greenbank Reach.

The Hodges had a white anchor light properly placed in the rigging. This light and that of another schooner lying west of the Mouth Ranges were seen by the master of the Prudence when about a mile

and a half away. He followed the course of the ranges to a point where he considered it safe to bear to the northeast in order to pass the Hodges in safety. The Prudence and Karl did pass in safety, but the Dorothy was swung in by the flood tide too far towards the western shore, and so collided with the Hodges. It was contended at the trial, and doubtless this is an element of negligence which was to "be shown at the trial," that the Prudence was negligent in holding the ranges so long that she was compelled to make an abrupt turn, and further that, when the master saw the anchor light of the Hodges, he should have stopped the Prudence in time, loosed the hawser of the barges, and taken precaution to avoid the accident.

The master of the Prudence testified that he saw the light of the Hodges, and when "a mile and a half away knew that she was obstructing the channel and course of his tug and tow," and yet proceeded on his course up the river to and by the Hodges without stopping, investigating, or doing anything to avoid the collision that followed. Sherman Hager, master of the Hodges, testified that there was a customary course pursued by boats coming up the river, but the Prudence did not follow that course; that she held the ranges too long, and this necessitated a sharper turn at the bend in the river, where the Hodges was anchored, than would have been necessary if she had followed the proper course. The hawser between the Prudence and Karl was 100 feet long. It had not been changed since the river was entered, and it was testified that towing in a tortuous river required a shorter hawser than in the bay or ocean. This sharp turn, made sharper by holding the ranges too long, together with the strong flood tide, which carried the tow over toward the Hodges, and the long hawser between the Prudence and Karl, which gave the tow on the turn a long sweep, evidently contributed to the collision.

The Dorothy did not have a lookout, and so her master did not see the light of the Hodges until just before the collision. It is not only possible, but highly probable, that, had there been on the Dorothy a lookout, who would have notified the master at the wheel, he not only could, but would, have steered a little farther to the starboard, away from the Hodges, or loosed the hawser, dropped the anchor, and avoided the collision.

The decree of the District Court is presumptively right, and the burden of showing the contrary is on the appellant. Southern Railway Co. v. Lester, 151 Fed. 573, 575, 81 C. C. A. 53. Without going further into the evidence, in our opinion, it abundantly sustains the conclusions of the learned District Judge, who saw and heard the witnesses testify, and, notwithstanding the able brief, which shows patient and careful work by counsel for appellant, it has not been shown to our satisfaction that the decree is erroneous, and it is therefore affirmed.